OSCN Found Document:DEPARTMENT OF HUMAN SERVICES v. BRUCE

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 DEPARTMENT OF HUMAN SERVICES v. BRUCE
2016 OK 43
Case Number: 112070
Decided: 04/19/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 43, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

DEPARTMENT OF HUMAN SERVICES and COMPSOURCE OKLAHOMA, Petitioners,
v.
NANCY V. BRUCE and THE WORKERS' COMPENSATION COURT, Respondents.

ON APPEAL FROM THE WORKERS' COMPENSATION COURT

¶0 Claimant Nancy Bruce injured her neck on the job on May 14, 2012, and sought workers' compensation benefits. Although her Employer admitted the injury, the trial court denied compensability finding Claimant's employment was not the major cause of her injury. Claimant appealed, and a three-judge panel reversed and found that Claimant's employment was the major cause of the injury to her neck. Employer appealed, and the Court of Civil Appeals reversed the order of the three-judge panel. Upon review, we hold that the three-judge panel's decision finding Claimant's work-related injury on May 14, 2012, was the major cause of Claimant's neck injury is not against the clear weight of the evidence.

COURT OF CIVIL APPEALS' OPINION VACATED; CAUSE REVERSED
AND REMANDED WITH INSTRUCTIONS TO REINSTATE THE ORDER OF
THE THREE-JUDGE PANEL FILED JULY 29, 2013

E.W. Keller, Keller, Keller & Dalton P.C., Oklahoma City, Oklahoma, for Respondent Nancy V. Bruce.
Heather A. Lehman Fagan, Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Oklahoma City, Oklahoma, for Petitioners Department of Human Services and Compsource Oklahoma.

GURICH, J. 

¶1 Claimant Nancy Bruce worked as a Certified Nurse's Assistant, or "residential life staff aide," for the Oklahoma Department of Human Services for twenty-six years where her duties consisted primarily of lifting clients, cleaning them up, feeding them, and daily care. On May 14, 2012, Claimant was injured while lifting one such client. Upon attempting to lift the client, Claimant stated she felt immediate pain in her neck and a shocking and tearing sensation which shot down her left arm and into her thumb. Claimant reported the injury to her supervisor and went to the emergency room where it was recommended she follow up with a pain management doctor. Claimant then went to Dr. Cheng, who performed an examination and x-rays. Dr. Cheng also ordered an MRI of Claimant's cervical spine. The MRI indicated "severe left neuroforaminal narrowing from disc herniations at C5-6 and C6-7."[1] Dr. Cheng referred her to a neurosurgeon, Dr. Pollard, who saw Claimant on June 11, 2012. Around this time, Employer's insurance carrier appointed a case manager, D.J. Smith, to Claimant's case. Although Dr. Pollard recommended a two-level anterior cervical fusion, and scheduled Claimant's surgery on four separate occasions, the case manager for Employer's insurance company refused to authorize any further treatment.

¶2 The case manager then sent Claimant to Dr. Snell of Neuroscience Specialists, who evaluated Claimant on November 1, 2012. Dr. Snell found Claimant was temporarily totally disabled and recommended a "C5-6, C6-7 ACDF with allograft bone and plating."[2] Apparently still unhappy with the surgical recommendation of Dr. Snell, the insurance company then deposed Dr. Snell, wherein the attorney for the insurance company presented Dr. Snell with Claimant's testimony from a prior trial in 2006 wherein Claimant testified to having pain and numbness in her left arm. Although Dr. Snell was fully aware of Claimant's previous injuries, as reported in his evaluation of November 1, 2012, Dr. Snell stated that unless he was able to reexamine Claimant, he could no longer say with a reasonable degree of medical certainty that the major cause of Claimant's injury was the May 14, 2012 injury.

¶3 On February 7, 2013, Dr. Snell reevaluated Claimant. Dr. Snell specifically asked Claimant about her previous testimony regarding her left arm pain. Dr. Snell's report from the February 7, 2013 evaluation provides:

HISTORY OF PRESENT ILLNESS

During the deposition there were some questions about sworn testimony that she had. I questioned her about this today. She tells me that the pain that she was having at the time that she was giving sworn testimony was more of kind of an achy kind of tension pain in the arm and it was not an electric shock kind of pain, which is the kind of pain she had after her work related injury. She also said that the chiropractic had given her significant improvement, and although she did not have complete resolution [sic] there were definitely times between 2009 and her work injury in 2012 where she had potentially months of improvement to the point where she was not really having much arm pain. She said that her chiropractic visit frequency decreased significantly because of that associated improvement.

. . . .

CAUSATION

She reports to me she had problems with her neck really ever since 9-10 years ago. She also reports that she had some problems with some pain in the left arm which was more kind of a stretching tension kind of pain and that the chiropractic had significantly helped her with this to the point where she had several periods where she had months where she was not really having any arm pain prior to her work-related injury. She reports that after the 05/14/12 work related injury she started having electric shock type pain in the left arm, which was a new pain she had not experienced before. As such, it would appear that her work-related injury resulted in her symptomatic onset of this electric shock type pain going down the left arm. Certainly, it appears that she has had problems with left arm pain in the past, as noted above. Per her report today, the quality of her left arm pain changed significantly to a neuropathic kind of shocking type pain. It would appear that the onset of the shocking type neuropathic pain was related to her work-related injury, per her report.

The above opinions are based on a reasonable degree of medical certainty.[3]

Notably, Dr. Snell's February 7, 2013 evaluation also states: "I had recommended a C5-6, C6-7 ACDF with allograft bone and plating for her at the 11/01/12 visit and I continue to recommend this. . . . She is currently TTD and I will keep her at TTD."[4]

¶4 In addition to Dr. Snell's evaluation, Claimant was also evaluated by Dr. Wolf on July 30, 2012. Dr. Wolf, who was also aware of Claimant's previous complaints of pain in her neck, found as follows:

The patient was involved in an on-the-job accident on May 14, 2012, while employed by Norce (Oklahoma Department of Human Services). It is my opinion that as a result of this on-the-job accident, the patient has sustained injury to her cervical spine. She continues to have ongoing pain and upper extremity radicular symptoms primarily on the left side, to include weakness of the left arm and weakness in grip strength along with numbness in the thumb. The patient does have significant MRI findings of internal derangement of the cervical spine. She is in need of further neurosurgical consultation. 

In my medical opinion, the major cause of her injury and ongoing complaints and symptomatology is the accident on May 14, 2012, while employed by Norce (Oklahoma Department of Human Services). She does have objective medical evidence as well as permanent anatomical abnormalities as previously set forth.

After taking a history, reviewing the available medical records, and performing a physical examination I find that this patient is temporarily totally disabled from her usual occupation, secondary to this job-related injury, from May 14, 2012, and she will continue to be temporarily totally disabled until there is a resolution of her symptoms by additional testing and/or treatment or until in my medical opinion she has reached maximum medical improvement.[5]

¶5 On November 19, 2012, Claimant was evaluated, at the insurance carrier's request, by Dr. Munneke. Although Dr. Munneke opined that the "patient did sustain a strain injury to her cervical spine as a result of her accident on the aforementioned date [May 14, 2012]," he concluded that the "patient's need for surgery is unrelated to her accident that occurred on the 14th of May 2012."[6] Dr. Munneke found that the surgical recommendation of Dr. Snell was "related to her two prior injuries that occurred in 2003 and 2004."[7]

¶6 Claimant filed a Form 3 with the Worker's Compensation Court on July 26, 2012. The trial court held a hearing on April 23, 2013, and the Employer stipulated at the hearing that Claimant was involved in a work-related "incident" on May 14, 2012, but argued that such was not the major cause of Claimant's injuries or need for surgical treatment. Employer contended that all of Claimant's complaints stemmed from work-related injuries in 2003 and 2004.[8] Claimant testified at the hearing and did not deny that she had prior pain in her neck and left arm due to her earlier work-related injuries.

¶7 However, Claimant also testified, consistent with the medical reports introduced, that after the May 14, 2012 injury, the pain in the left side of her neck and down her arm consisted of a "zapping" and "electrical" sensation, which was not a symptom she experienced before the May 2012 injury. In spite of her Employer's admission of injury, the trial court, in an order filed May 6, 2013, denied compensability. Claimant appealed to a three-judge panel. The panel reversed, in an order filed July 29, 2013, and found that Claimant sustained an on-the-job injury "to the NECK (aggravation of pre-existing condition)," and that Claimant's employment was "the major cause of injury to the NECK and need for surgery."[9] The three-judge panel awarded Claimant temporary total disability benefits and ordered Employer to provide Claimant with reasonable and necessary medical treatment, including surgery. Employer appealed, and the Court of Civil Appeals vacated the order of the three-judge panel and directed the Workers' Compensation Court to enter an order denying compensability. Claimant petitioned this Court for certiorari review, and we granted review on November 24, 2014.

¶8 A compensable injury under the Workers' Compensation Code means "any injury or occupational illness, causing internal or external harm to the body, which arises out of and in the course of employment if such employment was the major cause of the specific injury or illness. . . ." 85 O.S. 2011 § 308(10)(a). "Major cause" is defined as "more than fifty percent (50%) of the resulting injury, disease or illness." 85 O.S. 2011 § 308(28).

¶9 Although COCA cited to Dr. Snell's November 1, 2012 evaluation, and Dr. Snell's deposition testimony, COCA failed to mention the reevaluation of Claimant by Dr. Snell on February 7, 2013, wherein Dr. Snell continued to assert that Claimant's work-related injury of May 14, 2012, was the major cause of her injury and continued to recommend that Claimant have surgery. Based upon Dr. Snell's unshakable opinion, together with other credible medical evidence from treating physicians who saw Claimant on referral from Dr. Snell and objective test findings supporting Claimant's need for surgery as a result of her most recent on-the-job injury, we conclude that the three-judge panel's decision finding Claimant's work-related injury on May 14, 2012, was the major cause of Claimant's neck injury is not against the clear weight of the evidence. See 85 O.S. 2011 § 340(D); Williams Cos. v. Dunkelgod, 2012 OK 96, ¶ 18, 295 P.3d 1107, 1113.

COURT OF CIVIL APPEALS' OPINION VACATED; CAUSE REVERSED
AND REMANDED WITH INSTRUCTIONS TO REINSTATE THE ORDER OF
THE THREE-JUDGE PANEL FILED JULY 29, 2013

¶10 Reif, C.J., Combs, V.C.J., Kauger, Watt, Edmondson, Colbert and Gurich, JJ., concur.

¶11 Winchester and Taylor, JJ., dissent.

FOOTNOTES

[1] Record on Appeal at 39.

[2] Record on Appeal at 31.

[3] Record on Appeal at 37-38.

[4] Record on Appeal at 37 (emphasis added).

[5] Record on Appeal at 40-41 (emphasis added).

[6] Resp. Ex. 1, at 4.

[7] Id. Dr. Munneke never treated the Claimant, and he was not deposed in this case. His report references certain tests conducted in 2012, the finding of disc herniations at two levels, and evidence of left median nerve entrapment at the wrist. Dr. Munneke agreed that Claimant sustained an injury on May 14, 2012, and needed surgery. He acknowledged a significant amount of treatment and objective testing after the May 14, 2012 injury. His report contains no estimate of when her two discs were herniated. There is no explanation of how she continued to work in the same job between 2004 and 2012 with disc herniations. He then states that she had a nearly normal exam in his office. Yet he paradoxically opines that her current need for surgery is related to her two prior injuries. The opinion of Dr. Snell has considerably more credibility than the opinion of Dr. Munneke. Resp. Ex. 1, at 2-4.

[8] Claimant was injured on-the-job in 2003 after being hit in the head by a patient. The injury resulted in three cracked teeth and headaches due to cervical sprain/strain. Claimant filed a workers' compensation claim--WCC# 2005-00951-R--and sought dental treatment and medical treatment to her neck. The Employer conceded Claimant's compensability for dental treatment but denied her request for medical treatment to her neck due to an intervening work-related automobile accident on March 1, 2004. The court denied Claimant's request for medical treatment to her neck due to the intervening automobile accident on April 3, 2006. Claimant did not appeal that order.

With regard to the work-related automobile accident on March 1, 2004, Claimant filed a separate workers' compensation case--WCC# 2004-3458-Y. The case was settled by Joint Petition on December 22, 2004. The Joint Petition found Claimant sustained accidental personal injury arising out of and in the course of her employment to her right leg, left leg, and all body parts known or unknown.

In June of 2010, Claimant sought to reopen the WCC# 2005-00951-R (the 2003 injury) based on change of condition for the worse to her neck. The Workers' Compensation Court reopened the case and authorized medical treatment to Claimant's neck. However, the Court of Civil Appeals reversed and found that the trial court had previously determined that the automobile accident was the intervening cause of the neck injury. Thus, COCA held that "because the second work-related accident broke the causal nexus to the original injury, any/all necessary treatment to Claimant's neck is attributable to that second accident alone. A finding that the motor vehicle accident constitutes the intervening cause of the neck injury is tantamount to a finding that the neck injury is not connected to the original 2003 workplace injury." Okla. Dep't of Human Servs. v. Nancy Bruce et al., Case No. 109,804, at 7 (Nov. 30, 2012) (unpublished).

Claimant did not petition this Court for certiorari review of that opinion, and mandate issued on January 15, 2013.

[9] Record on Appeal at 48-49.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2012 OK 96, 295 P.3d 1107, WILLIAMS COMPANIES, INC. v. DUNKELGOD
Discussed
Title 85. Workers' Compensation
 Cite
Name
Level

 85 O.S. 308, Definitions
Discussed
 85 O.S. 340, Repealed by Laws 2013, SB 1062, c. 208, § 171, eff. February 1, 2014
Cited